In the Matter of the Charges against E. TOWNSEND GOLDBERG, an Attorney, etc.

*Attorney — disbarment of — what abuse of the process of the court justifies it.*

Where an attorney for the plaintiff in a replevin action directed the sheriff to seize property of the defendant not described in the writ, and refused to permit the defendant to take an inventory of the goods and caused the same to be at once delivered to the plaintiff in the replevin action, the Appellate Division, in view of the fact that the attorney had previously been convicted of gross unprofessional misconduct, considered that the extreme penalty should be imposed and that he should be disbarred.

MOTION to disbar E. Townsend Goldberg, an attorney and counselor at law, made upon the report of a referee adjudging him guilty of certain charges preferred against him.

*Wm. M. K. Olcott,* for the motion.

*E. T. Goldberg,* in person, opposed.

PER CURIAM :

The respondent stands charged before this court with being guilty of " deceit, malpractice and acts constituting a misdemeanor, as attorney and counselor at law." The charges were brought to our attention by the petition of Michael E. Bannin. Specifications of the charges are set forth *in extenso* in that petition and were supported by the affidavits of several persons. The petition and affidavits were served upon the respondent, with a notice that an application would be made to the court to take such action thereupon as, in its judgment, justice might require. Affidavits in answer to the charges were submitted by the respondent, and an order was made referring the matter to a referee, " to take evidence and report the same to this court with his opinion thereon as to whether the said E. Townsend Goldberg has been guilty of the charges preferred against him as attorney and counselor at law." The referee has performed the duty devolved upon him and has transmitted to the court a voluminous record of the evidence taken by him, covering certain of the charges contained in the petition and certain other and supplemental charges preferred after the original order of reference was made, and which the referee was

also authorized to inquire into. It appears by the report of the referee that some charges were abandoned, but that in his opinion the respondent was guilty of one of the gravest offenses of which he was accused. As to all the matters of inquiry before the referee, the tone of his report is condemnatory in the extreme. He has disposed of some of them by the conclusion that they were not proven; that the evidence in its strict legal effect was insufficient to establish guilt, but his commentary upon the conduct of the respondent, in connection with the matters embraced in the charges generally, leaves no doubt of the moral impression made upon him. Upon reading the evidence, we are strongly inclined to the opinion that the referee has been very lenient to the respondent in concluding that the discarded charges were not established by sufficient proof, but for the purpose of disposing of this matter, we shall only consider that charge which the referee has deemed, upon the evidence, to have been fully established.

That charge is, that in the month of October, 1898, the respondent, as attorney for the plaintiff in two actions, procured writs of replevin to be issued against Louis Abrams, defendant in those actions, and that he, the respondent, took or directed to be taken from Abrams' place of business a large quantity of goods not described in the writs; that he refused to allow Abrams to take an inventory of the goods, and caused the same to be delivered at once to the plaintiffs in the replevin actions. That is a charge of oppression, abuse and gross wrongdoing on the part of an attorney. If he were guilty of the act specified in that charge, that act amounted to but little less than larceny. The referee has found upon clear evidence that the respondent gave the direction to the sheriff to take the property not included in the writs, and that such property was of the value of several thousands of dollars. There can be no doubt of the intent of the respondent, or of his knowledge of the facts. The referee remarks that the testimony upon the charge is very conflicting and much of it worthy of only slight consideration. He does not rely upon that given by Abrams, the defendant in the action who, he says, undoubtedly exaggerated the amount of goods he had on hand the day the replevin writs were executed, but that from the testimony of other witnesses he was satisfied that the charge was true.

The respondent has sought to excuse his conduct by showing that, after the replevin writs were executed, Abrams commenced an action against the plaintiffs in one of the replevin suits, claiming damages as the result of the illegal and improper taking of the property. Motions were also made to set aside the writs of replevin, and for a stay, but before the argument of the motions for a stay was made Abrams settled the replevin actions and discontinued his suit for damages and the goods were delivered to the plaintiffs in the replevin suit. From this, the respondent argues that the parties in interest have nothing to complain of, and that, therefore, he is not chargeable with malpractice or professional misconduct. But it appears that the discontinuance of Abrams' action and his settlement of the replevin suits were based upon the representation of the respondent that the plaintiffs in one of those replevin suits had agreed to make a settlement with Abrams' creditors, to start him anew in business, and to give him a credit for $10,000. That statement is corroborated by a Mr. Joseph, Abrams' attorney. The respondent denies this statement of Abrams and his attorney, and claims that upon an unconditional settlement, he paid from his own moneys to Joseph, as attorney for Abrams, a counsel fee of $750. What is further required to be said as to this charge may be quoted from the report of the referee, who remarks: "No reason is apparent, if the respondent's statement of the settlement is true, why he should have paid this fee to Abrams' counsel; except for a corrupt purpose, and if his story is true, his act, from a moral standpoint, is wholly indefensible and inexcusable. Considerable testimony was given upon the subject of the payment of this fee, but it has no bearing, nor does it throw any particular light, upon the truth of the charge that Goldberg caused to be taken from Abrams' store a large quantity of goods not described in the writ of replevin, and it becomes wholly unimportant in the decision of this case, in view of the fact that, after hearing the testimony of the respondent and his associate Steuer, and also having seen and heard the testimony of Mr. Joseph, I feel constrained to say that I do not believe the respondent's story as to the payment of this fee, and in my opinion the charge made against Joseph in that respect is untrue." Upon all the testimony upon the subject of this charge it is too clear for doubt that the respondent is guilty. His act of oppression and gross wrongdoing,

amounting to criminality, is proven. His deceit is also proven, and, as the referee well says, the $750 could only have been paid to Joseph for a corrupt purpose.

As said before, and judging from what appears in the record, we cannot agree with the referee that other charges against the respondent are not proven. But upon the specific charge which has been established the respondent should be punished; and, in view of his previous record, there is no other course left open than to inflict upon him the extremity of punishment. This is not the first time he has been arraigned before the court for gross unprofessional misconduct. In 1894 charges of the most serious character were preferred against him, were made the subject of judicial inquiry, and his guilt was fully established. In the proceeding based upon such charges it was found that the respondent altered an undertaking used upon an unsuccessful application to the presiding justice of this court, and thereafter, without procuring it to be re-executed or reacknowledged, used such altered undertaking upon an application for an attachment to a judge of the Court of Common Pleas, although the respondent had sworn positively that the undertaking had been re-executed. By the order of the General Term of the Supreme Court the respondent was suspended from practice for two years. The reasons which induced the court then to subject him to that moderate punishment are set forth in its memorandum opinion in the following words : " As to the measure of punishment, while it is undoubtedly a case for discipline, it is not, in view of the attorney's youth and inexperience, a case for the extreme penalty of disbarment. That would wreck this young man's entire life. When he fell he had been admitted to the bar less than a year, and he has yet ample time to redeem himself, and he should be afforded the opportunity to do so. He will be sufficiently punished and the honor of the profession vindicated by a judgment of suspension for a substantial period. The court leaves him the opportunity of redemption and an incentive to work for its realization."

That the respondent was unworthy of the leniency of the court is demonstrated. The whole of the record now before us shows that he is incorrigible and defiant in his perversity. He has not only failed to heed the admonition of the court to redeem himself, but his conduct shows that he is utterly devoid of an understanding or

appreciation of the duty and moral responsibility of a member of the profession, and that he is utterly unworthy to belong to it.

The judgment of this court is that the respondent should be disbarred, and his name stricken from the roll of the attorneys and counselors of the courts of this State.

Present — VAN BRUNT, P. J., BARRETT, PATTERSON, O'BRIEN and McLAUGHLIN, JJ.

Respondent disbarred.